C. Alex Naegele (State Bar No. 255887)
C. ALEX NAEGELE,
A PROFESSIONAL LAW CORPORATION
95 South Market Street, Suite 300
San Jose, CA, 95113
Telephone: (408) 995-3224
Facsimile: (408) 890-4645
Email: alex@canlawcorp.com

Attorney for Non-Debtor Interested Parties
DOORMAN PROPERTY MANAGEMENT, INC. and
NICHOLAS KRAEMER AND BARRETT RAFTERY,
A CALIFORNIA GENERAL PARTNERSHIP

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>DOORMAN PROPERTY MAINTENANCE, INC.<br><br>Debtor. | Case No. 15-30912 DM<br><br>Chapter 7<br><br>**DECLARATION OF BARRETT RAFTERY IN OPPOSITION TO TRUSTEE'S MOTION FOR ORDER SUBSTANTIVELY CONSOLIDATING ESTATES**<br><br>Date: April 8, 2016<br>Time: 10:00 a.m.<br>Place: 450 Golden Gate Avenue,<br>Courtroom 17,<br>San Francisco, CA, 94102<br>Judge: Hon. Dennis Montali |

I, Barrett Raftery, hereby declare as follows:

1. I am a shareholder of Doorman Property Management, Inc., the non-debtor entity which the trustee seeks to consolidate with the debtor (the "Debtor") in the above-captioned case, as well as a partner in Nicholas Kraemer and Barrett Raftery, A California General Partnership (the "Partnership"). I have personal knowledge of the facts set forth in this declaration, and if called to testify, would and could testify competently thereto. As to those matters stated on information and belief, I believe them to be true. I submit this declaration in support of Doorman Property Management, Inc. and the Partnership's opposition to the chapter 7 trustee's motion to consolidate.

2. Since the middle of last year, I have not been employed on a full time basis by non-Debtor entity Doorman Property Management, Inc, as this entity has been operated by and primarily benefits a small but dedicated staff.

3. However, witnessing first hand the progression over several years, I want to make it clear that the Debtor did not "roll into" either of the other two entities the trustee seeks to consolidate with the Debtor. The Debtor, Doorman Property *Maintenance*,, as its name implies, was a purely construction company, with the appropriate licensing and staff for that operation.

4. Non-debtor Entity Doorman Property *Management*, Inc., as its name implies, only engaged in property management and real estate brokerage business functions.

5. Since the bankruptcy filing of Debtor Doorman Property *Maintenance*., **no** construction has taken place by either non-debtor entity Doorman Property *Management*, Inc., or the Partnership.

6. The Debtor Doorman Property *Maintenance* was never to be included with the non-debtor Doorman Property *Management*, Inc., which can be seen by the licensing associated with that company; that it handles the real estate functions of property management and residential leasing **only**.

7. The trustee seeks to confuse these issues by incorrectly referring to the two names above throughout the motion to consolidate, in an attempt to confuse the Court. However, the issues are quite clear: the Debtor only performed construction and property maintenance work,

and the non-Debtor corporation only performed property management and real estate sales. It is really that simple.

8. Regarding the current state of affairs for non-debtor entity Doorman Property Management, Inc. - at this point the majority of the income and vast majority of the work, is carried on by the staff without assistance from Nick and I. They operate the company and are all real estate professionals; non-debtor Doorman Property Management, Inc., does not employ construction personnel no property maintenance services are offered or provided by non-debtor entity Doorman Property Management, Inc.

9. All three of the staff have worked hard to get the company where it is and depend on it for their incomes, housing and careers, as indicated by their separate declarations filed concurrently herewith.

10. The trustee's motion to consolidate confuses rather simple concepts which can be explained as follows. Nick and I formed a general partnership called Nicholas Kraemer and Barrett Raftery, A California General Partnership (the "Partnership") in 2011. The Partnership used the "doing business as" (dba) name of Doorman Property Management. A true and correct copy of the partnership agreement is attached hereto as Exhibit A.

11. The Partnership engaged in two separate lines of work 1) property management and real estate sales and 2) property repairs, maintenance, and construction.

12. Over time, it became clear that these were two separate lines of business with different licensing requirements, different employees, different assets, and different customers, and needed to be split up into two different legal entities.

13. Accordingly, the two different lines of work were split into two different companies 1) Doorman Property *Maintenance*, which only performed construction and 2) Doorman Property Management, Inc., which only performed property management and real estate sales.

14. The intention of the multiple entities was to clarify ambiguity both to clients and other parties. Due to ambiguity we made multiple entities to clarify for clients and all parties

who was doing what, since there are entirely different staff and skill sets, different licensing, different insurance, it was cumbersome and inaccurate to lump all the functions together.

15. The California Secretary of State documents make this distinction fairly clear. A true and correct copy of Doorman Property *Maintenance's* California Secretary of State record printout is attached hereto as Exhibit B. A true and correct copy of Doorman Property *Management*, Inc.'s California Secretary of State record printout is attached hereto as Exhibit C.

16. The current motion looks confuse identities assets in a way that is counter productive to the staff and clients of the all the parties involved.

17. Moreover, the current motion is highly detrimental to the creditors, vendors, and customers of non-debtor Doorman Property Management, Inc. due to the fact that substantively consolidating non-Debtor Doorman Property Management, Inc. will likely cause three very good employees and staff to lose their job, will cause customers of Doorman Property Management, Inc. to lose their property manager, and will add very little in assets to the Debtor's bankruptcy estate, as Doorman Property Management, Inc. has very few assets to liquidate, as most property management businesses do.

18. Accordingly, the harm to creditors, employees, and customers of Doorman Property Management, Inc. greatly outweighs any small potential assets that the Debtor's bankruptcy estate would acquire if the Court grants this motion and would essentially be the equivalent of shutting down a viable business that would actually take away money from creditors of non-Debtor entity Doorman Property Management, Inc. with little benefit to the Debtor in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of March 2016, at San Francisco, California

                                          /s/ Barrett Raftery
                                          Barrett Raftery