EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# FILED

**NOT FOR PUBLICATION**

JUN 19 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-17-1233-TaFB |
| DOORMAN PROPERTY MAINTENANCE, | Bk. No.   3:15-bk-30912-DM |
| Debtor. | |
| NICHOLAS KRAEMER; BARRETT RAFTERY, | |
| Appellants, | |
| v. | MEMORANDUM* |
| FS PARTNERSHIP; FULTON HOUSE, LLC, | |
| Appellees. | |

Argued and Submitted on May 25, 2018
at San Francisco, California

Filed – June 19, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Dennis Montali, Bankruptcy Judge, Presiding

Appearances:    Charles Alex Naegele argued for appellants;
William F. McLaughlin argued for appellees.

Before:    TAYLOR, FARIS, and BRAND, Bankruptcy Judges.

---

* This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

This appeal involves a contract to renovate the "Archbishop's Mansion," a building in San Francisco, California (the "Property").  FS Partnership hired "Doorman Property Maintenance" to perform the required renovation.  At that time, Doorman Property Maintenance was a DBA for Doorman Property Management, a California Partnership (the "Doorman Partnership").  Nicholas Kraemer and Barrett Raftery (collectively, "Appellants") formed the Doorman Partnership and were its general partners.  They also subsequently formed and have an interest in two corporations with names including the words "Doorman Property."

During the renovation project, the Doorman Property entities lost the required contractor's license, ceased doing business, and "Doorman Property Management" filed a chapter 7[1] bankruptcy petition.  There was initial confusion about which Doorman Property entity filed, but eventually a substantive consolidation determination brought two Doorman Property entities before the bankruptcy court.

The FS Partnership and a related entity, Fulton House LLC, (collectively, the "Fulton Entities") filed a $310,000 proof of claim in the case.  Appellants objected and sought to disallow the claim in full.  After a trial, the bankruptcy court partially overruled the objection; it found that the claim

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  All "Rule" references are to the Federal Rules of Bankruptcy Procedure.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

1  totaled $286,896 and that $186,896 was a Doorman Partnership
2  liability.

3       Appellants principally argue on appeal that the bankruptcy
4  court deprived them of due process: they assert that they
5  intended to argue, in a different proceeding and based on new
6  arguments and additional evidence, that the debt owed by the
7  Doorman Partnership should be set at $0.

8       The bankruptcy court, however, did not clearly err in
9  finding that the Doorman Partnership contracted with
10 FS Partnership and was partially liable on the claim.  The
11 additional evidence advanced by the Doorman Property entities
12 does not show otherwise.  And Appellants had reasonable notice
13 that the bankruptcy court would decide the Doorman Partnership's
14 liability in the context of the claim objection.
15 We AFFIRM the bankruptcy court.

16                          **FACTS[2]**

17      **Appellants form various "Doorman Property" entities and do**
18 **business with the Fulton Entities.**  In January 2011, Appellants
19 formed the Doorman Partnership and named themselves its general
20 partners.  The Doorman Partnership did business as "Doorman
21 Property Maintenance."

22      In 2012, FS Partnership bought the Property and began a
23 business relationship with the Doorman Partnership.

24      In 2013, Appellants formed a California S corporation; they
25

26      [2]  We exercise our discretion to take judicial notice of
    documents electronically filed in the bankruptcy case and a
27  related adversary proceeding.  See Atwood v. Chase Manhattan
    Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP
28  2003).

                              3

1 │ also named it "Doorman Property Management."

2 │     In 2014, FS Partnership signed a "Terms and Conditions"

3 │ agreement for a job located at the Property (the "Property

4 │ Agreement"); the Property Agreement bears a Doorman Property

5 │ Maintenance header and provides for payments to "Doorman

6 │ Property Management."  Mr. Kraemer signed it as an "Authorized

7 │ Doorman Representative."  The record supports that the Doorman

8 │ Partnership was the contracting party as, at the time of the

9 │ Property Agreement, only the Doorman Partnership did business as

10 │ Doorman Property Maintenance.

11 │     After the Property Agreement was signed, corporate Doorman

12 │ Property Management amended its articles of incorporation to

13 │ change its name to "Doorman Property Maintenance."

14 │     And about the same time, Appellants formed a third entity,

15 │ another California corporation called "Doorman Property

16 │ Management, Inc."

17 │     In January 2015, Doorman Property Management (no corporate

18 │ identifier) and FS Partnership modified the Property Agreement.

19 │ At this time, only the Doorman Partnership was named "Doorman

20 │ Property Management," and the modification of the Property

21 │ Agreement by the Doorman Partnership provides additional

22 │ evidence that it was the contracting Doorman Property entity.

23 │     A month later, Doorman Property Maintenance and Doorman

24 │ Property Management Inc. as "S Corporations in California"

25 │ executed two demand promissory notes evidencing loans from

26 │ Fulton House LLC.  The notes were in the principal amounts of

27 │ $25,000 and $75,000.

28 │     At some point, the only contractor's license allowing the

4

1  Doorman Property entities to operate was suspended, and they
2  shut down.

3     **The bankruptcy filing, substantive consolidation, and claim**
4  **objection.**  In July 2015, Doorman Property Management filed a
5  chapter 7 bankruptcy petition.  The petition listed "DBA
6  Doorman; DBA Doorman Property Maintenance" as names used in the
7  last 8 years.  The names in the petition were accurate only in
8  reference to the Doorman Partnership.  The petition also
9  provided two EINs, one ending in 7 and the other in 2.  One EIN
10 relates to the Doorman Partnership; the record does not identify
11 the entity related to the other EIN.  That said, however,
12 "Corporation" was checked in the "Type of Debtor" box, and
13 Mr. Raftery signed the petition as CFO.

14     As it turns out, Appellants did not want the Doorman
15 Partnership to file.  They eventually noticed the error and
16 filed an amended petition that changed the Debtor's name to
17 "Doorman Property Maintenance, a CA Scorp" and listed "FKA
18 Doorman Property Management, a CA S Corp" as a name used in the
19 last 8 years.  The amended petition identified a new EIN, this
20 time ending in 9.  The "Corporation" box remained checked.
21 Mr. Raftery signed the petition as CFO and filed an explanatory
22 declaration:

23       In the originally filed Voluntary Petition, Debtor
         incorrectly listed the EIN of the Doorman Property
24       Management Partnership. . . . Debtor had intended to
         file the instant Chapter 7 for the California
25       Corporation and not a General Partnership. Therefore,
         Debtor now amends the Voluntary Petition deleting the
26       EIN of the Doorman Property Management Partnership.

27       Further, in the originally filed Voluntary Petition,
         Debtor inadvertently and incorrectly listed "Doorman
28       Property Management" as the name of the filing Debtor

instead of "Doorman Property Maintenance, a CA SCorp." Debtor now amends the Voluntary Petition to list "Doorman Property Maintenance, a CA SCorp. formerly known as Doorman Property Management, a CA S Corp." as the filing name of the Debtor.

Ambiguity as to the debtor or debtors before the bankruptcy court thus existed.  And in the face of this confusion, the Fulton Entities filed Claim No. 18-1 in the amount of $310,000 based on "Breach of Contract" and "Construction Defect".  They named the debtor as "Doorman Property Maintenance" – the name most recently selected for the case absent the "a CA S Corp" limitation.

The chapter 7 trustee promptly disputed the legal effect of the petition amendment; she argued that deleting the partnership name did not remove it or its assets from the bankruptcy estate. Eventually, the Trustee moved for an order substantively consolidating "Doorman Property Management, Inc., and (to the extent not already part of the above bankruptcy case) Doorman Property Management, a general partnership, with the estate of the above Debtor."

Over opposition, the bankruptcy court granted the motion, in part, "insofar as the Trustee sought to consolidate substantively Doorman Property Management, a corporation, to the extent that Doorman Property Management, a general partnership, and its assets and liabilities, were not at all times part of the bankruptcy case."  Consolidation was effective nunc pro tunc to the petition date.  The bankruptcy court deferred deciding whether to substantively consolidate Doorman Property Management, Inc.

The substantive consolidation order was not appealed.  It

Case: 15-30912   Doc# 183   Filed: 06/19/18   Entered: 06/21/18 15:59:28   Page 6 of 21

"combine[d] the assets and liabilities of [the] separate and
distinct—but related—legal entities into a single pool and
treat[ed] them as though they belong[ed] to a single entity."
Alexander v. Compton (In re Bonham), 229 F.3d 750, 764 (9th Cir.
2000).

Anticipating that estate assets would not pay claims in
full, the Trustee demanded that Appellants make up any
deficiency as required by § 723 based on their status as general
partners of the Doorman Partnership.  The Trustee later filed an
adversary proceeding against Appellants and included a § 723
claim for relief; she alleged that there was a $539,039
deficiency between the assets and aggregate claims on file and
that, under § 723, Appellants were liable for the deficiency as
partners.

Appellants, as "non-debtor interested parties" and as
"general partners of [the Doorman Partnership]" objected to
Claim No. 18.  The claim objection relied significantly on their
potential § 723 status as a basis for standing.  And the
arguments advanced in the claim objection relate exclusively to
claims under the Property Agreement and alleged defenses to such
claims.  FS Partnership defended the claim.

**The bankruptcy court's oral ruling and separate order
resolving the claim objection.**  The bankruptcy court eventually
held a one-day trial on the claim objection.  Just over a week
later, the bankruptcy court made oral findings of fact and
conclusions of law.  It liquidated the claim and found that it
supported a claim for $186,896 in damages based on breach of the
Property Agreement.  It also found that the corporate Doorman

7

1  Property entities, but not the Doorman Partnership, owed

2  $100,000 on the promissory notes.

3       In sum, the bankruptcy court found that the Fulton Entities

4  had "a total allowed claim of 286,896, . . . of which 186,896 is

5  joint and several liability of both the [Doorman Partnership]

6  and the corporate debtor."  Oral Findings of Fact, Hr'g Tr.

7  (Jan. 18, 2017) at 9:15-19.

8       Having ruled, the bankruptcy court asked if either party

9  had any questions or points of clarification.  Appellants'

10  counsel noted his supposition that the trial would not decide

11  "the differentiation between the corporation and the partnership

12  . . . ."  Id. at 10:10-11.  The bankruptcy court did not alter

13  its conclusion but told Appellants they could bring a

14  reconsideration motion.

15       The bankruptcy court entered an order consistent with its

16  oral ruling.

17  **Appellants seek reconsideration.**  Appellants filed a

18  reconsideration motion that argued, among other things, that no

19  debt should be allocated to the Doorman Partnership.  They also

20  provided evidence allegedly supporting their position.  The

21  bankruptcy court issued a memorandum decision and separate order

22  denying reconsideration.  He carefully discussed Appellants'

23  theories and evidence but found neither persuasive.  In

24  particular, he noted that the new argument that Appellants

25  abandoned the Doorman Partnership was inconsistent with the

26  record.  He further noted the complete absence of evidence that

27  Appellants properly dissolved the Doorman Partnership as

28  required by California law and outlined the consequences of this

1  failure. And he underscored that the reconsideration motion was
2  not based on newly discovered evidence; rather, it was a second
3  attempt after Appellants' counsel's concession that he had not
4  previously made available arguments with sufficient precision.
5      Appellants timely appealed.
6  **JURISDICTION**
7      The bankruptcy court had jurisdiction under 28 U.S.C.
8  §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C.
9  § 158.
10 **ISSUES**
11     Did the bankruptcy court deprive Appellants of due process?
12     Did the bankruptcy court err when it decided the claim
13 objection?
14     Did the bankruptcy court abuse its discretion when it
15 denied Appellants' reconsideration motion?
16 **STANDARDS OF REVIEW**
17     We review de novo whether a litigant's due process rights
18 were violated. DeLuca v. Seare (In re Seare), 515 B.R. 599, 615
19 (9th Cir. BAP 2014).
20     In the claim objection context, we review the bankruptcy
21 court's legal conclusions de novo and its findings of fact for
22 clear error. Lundell v. Anchor Const. Specialists, Inc. (In re
23 Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000).
24     We review for an abuse of discretion the bankruptcy court's
25 decision on a § 502(j) reconsideration motion. Heath v. Am.
26 Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424,
27 429 (9th Cir. BAP 2005).
28     A bankruptcy court abuses its discretion if it applies the

1  wrong legal standard, misapplies the correct legal standard, or
2  makes findings that are illogical, implausible, or without
3  support in inferences that may be drawn from the facts in the
4  record.  See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d
5  820, 832 (9th Cir. 2011) (citing United States v. Hinkson,
6  585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

7      A finding is "clearly erroneous" when "although there is
8  evidence to support it, the reviewing court on the entire
9  evidence is left with the definite and firm conviction that a
10  mistake has been committed."  Anderson v. City of Bessemer City,
11  470 U.S. 564, 573 (1985) (quotation marks omitted).

12                              **DISCUSSION**
13  **A.    The bankruptcy claims process**
14      A creditor asserts a claim in bankruptcy by filing a proof
15  of claim.  11 U.S.C. § 501(a); Fed. R. Bankr. P. 3001, 3002.  A
16  claim is "deemed allowed, unless a party in interest . . .
17  objects."  11 U.S.C. § 502(a).  If an interested party objects,
18  the bankruptcy "court, after notice and a hearing, **shall**
19  determine the amount of such claim . . . and **shall** allow such
20  claim in such amount . . . ."  11 U.S.C. § 502(b) (emphasis
21  added).

22      A properly filed proof of claim "shall constitute prima
23  facie evidence of the validity and amount of the claim."  Fed.
24  R. Bankr. P. 3001(f).  To overcome this presumption of validity,
25  the objector must do more than formally object.  Lundell, 223
26  F.3d at 1039.  Instead, to "defeat the claim, the objector must
27  come forward with sufficient evidence and 'show facts tending to
28  defeat the claim by probative force equal to that of the

allegations of the proofs of claim themselves.' " _Id._ (citing
_Wright v. Holm (In re Holm)_, 931 F.2d 620, 623 (9th Cir. 1991)).

"If the objector produces sufficient evidence to negate one
or more of the sworn facts in the proof of claim, the burden
reverts to the claimant to prove the validity of the claim by a
preponderance of the evidence." _Id._ (quoting _Ashford v. Consol._
_Pioneer Mortg. (In re Consol. Pioneer Mortg.)_, 178 B.R. 222, 226
(9th Cir. BAP 1995)).  The ultimate burden of persuasion, thus,
remains with the claimant.  _Id._

An allowed or disallowed proof of claim "may be
reconsidered for cause.  A reconsidered claim may be allowed or
disallowed according to the equities of the case." 11 U.S.C. §
502(j); Fed. R. Bankr. P. 3008.  If the time to appeal an order
on a claim objection has not expired, a reconsideration request
is governed by Civil Rule 59, applied in bankruptcy by Rule
9023.  _Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)_, 344
B.R. 94, 103 (9th Cir. BAP 2006), _aff'd_, 277 F. App'x 718 (9th
Cir. 2008).

**B.   The bankruptcy court did not clearly err when it found that**
**the contracting party was the partnership.**

Appellants argue that the bankruptcy court's allocation of
liability was not based on admissible evidence.  But their brief
is self-defeating because it points to evidence the bankruptcy
court relied upon – they just think the evidence is either "not
really evidence" or ambiguous.  Appellants' Opening Br. at 24.
We disagree.

The bankruptcy court found that the Doorman Partnership
entered into the Property Agreement with FS Partnership.  It

11

1  based this conclusion on the contract, which the parties entered
2  into evidence: it "has a title, 'Doorman Property
3  Maintenance.' " Oral Findings of Fact at 11:8-9. And that
4  title "doesn't recite corporation or not." Id. at 11:9-10.

5      Appellants argue that the lack of a corporate identifier is
6  inconclusive; they emphasize that the corporation's official
7  name does, in fact, lack the corporate identifier: it is named
8  Doorman Property Maintenance. And Appellants are correct that,
9  on a cursory read, this appellation is ambiguous because it
10  could be read two ways: it could be the Doorman Partnership or a
11  Doorman corporation.[3]

12      Appellants are wrong, however, when they suppose this
13  ambiguity renders clearly erroneous the bankruptcy court's
14  finding. To the contrary: "Where there are two permissible
15  views of the evidence, the factfinder's choice between them
16  cannot be clearly erroneous." Anderson, 470 U.S. at 574; United
17  States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003). And
18  "[t]his is so even when the district court's findings do not
19  rest on credibility determinations, but are based instead on
20  physical or documentary evidence or inferences from other
21  facts." Anderson, 470 U.S. at 574.

22      Further, when the Property Agreement was signed, the

23
24  ───────────────

25      [3] Appellants stated this more clearly in their
    reconsideration motion, emphasis added: "This Court made its
26  ruling on the partnership versus corporation liability split
    **based upon a single piece of evidence — the name in the**
27  **contract.** Because this name was the same as the name of the
    Partnership, the Court concluded that this must have been a
28  liability of the Partnership."

corporation had not changed its name to Doorman Property
Maintenance.  And after the corporation changed its name,
Doorman Property Management (i.e., the Doorman Partnership)
agreed with FS Partnership to modify the Property Agreement.

The bankruptcy court thus did not clearly err when it found
that the contracting party was the Doorman Partnership.

**C.    The bankruptcy court did not deprive Appellants of due
       process.**

Appellants raise two due process arguments.  Neither
establishes that the bankruptcy court erred.

**Appellants were on notice that the bankruptcy court would
determine the amount of the claim against the partnership.**
Appellants argue that the bankruptcy court denied them due
process because they were not on notice that it would decide
whether the claim was an obligation of the corporation or the
Doorman Partnership or both.  We disagree; Appellants
incorrectly assume the bankruptcy court did something other than
liquidate the claim.

"Due process requires notice reasonably calculated, under
all the circumstances, to apprise interested parties of the
pendency of the action and afford them an opportunity to present
their objections."  United Student Aid Funds, Inc. v. Espinosa,
559 U.S. 260, 272 (2010) (internal quotation marks and citation
omitted).  As we illustrate, Appellants had notice that the
bankruptcy court would determine the amount of the claim.

The Fulton Entities filed Claim No. 18 before substantive
consolidation.  At that time, there was ambiguity about which
entity was the debtor.  That said, the claim was based on

13

"Breach of Contract" and "Construction Defect."  They attached
the relevant contract, the Property Agreement.  As discussed
above, the Doorman Partnership was the party to that contract.
So the Fulton Entities asserted a claim against, at least in
part, the Doorman Partnership.

The bankruptcy court entered the substantive consolidation
order.  That order clarified that to the extent the Doorman
Partnership was not "at all times part of the bankruptcy case[]"
it was consolidated with the bankruptcy estate.

Appellants then objected to the claim and argued they had
standing to do so as general partners of the Doorman Partnership
and as corporate equity holders.  They disputed liability on the
Property Agreement, and they sought to disallow the claim in
full on a variety of theories.

After trial, the bankruptcy court overruled the claim
objection in part, sustained it in part, and attributed a
portion of the claim to the Doorman Partnership.  These
decisions are all consistent with the requirements of § 502(b).

Appellants had notice that the bankruptcy court would
determine the amount of the claim as to the consolidated debtor,
which included the Doorman Partnership.  And they requested a
determination relevant to partnership debt when they objected as
general partners.  Any misapprehension that the bankruptcy court
would liquidate the claim owed by the Doorman Partnership was
not based on a failure of due process.  Durkin v. Benedor Corp.
(In re G.I. Indus., Inc.), 204 F.3d 1276, 1280 (9th Cir. 2000)
("In other words, a bankruptcy court can only consider an
objection to a claim and thus overcome the presumption of its

14

1 validity by examining the contract itself and the circumstances
2 surrounding its formation.").

3     The bankruptcy court's standing analysis, which we find
4 compelling, underscores this point. In the claim objection
5 context, a chapter 7 debtor, "in its individual capacity, lacks
6 standing to object unless it demonstrates that it would be
7 'injured in fact' by the allowance of the claim." Cheng v.
8 K&S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 454
9 (9th Cir. BAP 2004), aff'd, 160 F. App'x 644 (9th Cir. 2005).
10 In the case of a corporation, this includes its officers,
11 directors, and agents. So when "the estate is insolvent, a
12 chapter 7 debtor ordinarily lacks standing to object to proofs
13 of claim." Wellman v. Ziino (In re Wellman), 378 B.R. 416, 2007
14 WL 4105275, at *1 n.5 (9th Cir. BAP 2007) (unpublished). But
15 when "there is a sufficient possibility of a surplus to give the
16 chapter 7 debtor a pecuniary interest or when the claim involved
17 will not be discharged[]" the chapter 7 debtor has standing.
18 Id.

19     Here, Appellants arguably had standing to object on two
20 bases. First, as they made abundantly clear, they were general
21 partners of the Doorman Partnership subject to the Trustee's
22 § 723 action; any reduction in claims against the partnership
23 would reduce any deficiency the Trustee could seek against them.
24 Second, they had an equity interest as shareholders in the
25 debtor corporation; if objecting to the claim created a surplus
26 estate, they had standing.

27     But nothing suggests that this would be a surplus estate;
28 Appellants point to no fact evidencing that there is even a

Case: 15-30912    Doc# 183    Filed: 06/19/18    Entered: 06/21/18 15:59:28    Page 15 of 21

1  remote possibility of a surplus.[4]  Accordingly, Appellants had
2  standing to object to the claim only because they were general
3  partners seeking to disallow a partnership claim.

4     Appellants' remaining arguments also are not persuasive.
5     They misread Rule 3001(f) when they assert that a properly
6  filed claim is only prima facie evidence of "the **amount** of the
7  claim, **not** the nature of the claim." Appellants' Opening Br. at
8  19.  To the contrary, Rule 3001(f) states that a properly filed
9  claim is "prima facie evidence of the **validity and** amount" of
10 that claim.  Fed. R. Bankr. P. Rule 3001(f) (emphasis added).

11    Also erroneous is their suggestion that, because neither
12 party bore the burden of proof on the allocation issue, the
13 bankruptcy court "should not have raised the [allocation] issue
14 *sua sponte*." Appellants' Opening Br. at 20.  Their starting
15 premise is wrong.  The bankruptcy court decided liability on a
16 contract because Appellants objected, as partners, to a claim
17 asserting breach of a contract.  In the absence of a pretrial
18 stipulation or other bifurcation of issues for trial, the
19 identity of the contracting party is relevant to a breach of
20 contract claim.  So the bankruptcy court decided the matter put
21 before it: liability on the contract.

22    In short, Appellants were on notice that the bankruptcy
23
24 _____

25    [4]  At oral argument before the Panel, Appellants' counsel
26 argued that, if all of Appellants' claim objections were
   sustained, there would be a surplus estate.  But the assertions
27 of counsel at an appellate argument are not evidence, and the
   disallowance of this claim would not eliminate an alleged
28 deficiency of more than $500,000.

16

1  court would determine the amount of the Doorman Property claim.[5]

2  **The bankruptcy court did not shift the burden of proof.**

3  Appellants' other due process argument asserts that the

4  bankruptcy court deprived them of due process by shifting the

5  burden of proof in the § 723 action.  In that action, the

6  Trustee has the burden to prove that the partnership owed the

7  debt.  Appellants argue that, by deciding which entity owed the

8  debt in the claim objection, the bankruptcy court shifted the

9  burden of proof to Appellants.

10  Appellants overstate things.  The bankruptcy court has not

11  reached a final decision in the § 723 action, and it has not

12  impermissibly shifted a burden.  If Appellants disagree with the

13  bankruptcy court's resolution of the § 723 action, they may

14

15      [5] We also note another issue, one that crystalized at oral

16  argument: Which entity filed initially?  Appellants proceed as
   if the Doorman Partnership did not file bankruptcy and was not

17  in bankruptcy until the substantive consolidation order.

18      We question this conclusion.  In its oral findings of fact,
   the bankruptcy court found as follows: "So the Debtor, Doorman

19  Property Maintenance, is a partnership; that's been well
   established, and its bankruptcy case is substantively

20  consolidated with Doorman Property Maintenance, Inc., a

21  corporation."  Oral Findings of Fact at 4:4-7.  We read this as
   a dispositive ruling on the issue.

22      Appellants disagree but do not dispute the finding in their
   opening appellate brief.  Accordingly, if our reading is the

23  correct one, they waived any argument about it.  McKay v.

24  Ingleson, 558 F.3d 888, 891 (9th Cir. 2009).
       Further, if the bankruptcy court found that the Doorman

25  Partnership filed the initial bankruptcy petition, which as we
   read the finding it did, any contest on the point would be

26  unavailing.  Here, the bankruptcy court chose between two

27  permissible views of the facts.  We are not free to reach
   another conclusion on appeal.  Anderson, 470 U.S. at 574;

28  Elliott, 322 F.3d at 714.

1   appeal from that decision.

2       We acknowledge that Appellants are concerned that the claim

3   objection order will have a collateral effect in the § 723

4   action.  See Appellants' Reply Br. at 4.  Issues related to the

5   § 723 action, however, are not presently before us.  Nor would

6   it be appropriate for us to render an advisory opinion about the

7   prospective effect of the claim objection order (e.g., discuss

8   whether law of the case applies or whether all the elements of

9   issue preclusion are satisfied).  E.g., Restoration Homes, LLC

10  v. Taniguchi, No. 15-CV-00032-WHO, 2015 WL 4734488, at *2 n.1

11  (N.D. Cal. Aug. 7, 2015) ("Moreover, as described below, because

12  I do not determine what the bankruptcy order precludes, but

13  merely clarify that it furnishes a basis for a plea of res

14  judicata, assuming the appropriate elements are met, I do not

15  offer an improper advisory opinion.").  Appellants may argue

16  those points at the appropriate place; this appeal is not it.[6]

17      That said, drawing their due process argument to its

18  logical conclusion would mean that any decision that could have

19  issue or claim preclusive effect in another lawsuit deprives the

20  losing party of due process; that is not the law.[7]

21  _____

22      [6]  Appellants' reliance on GMAC Mortgage Corporation v.
    Salisbury (In re Loloee), 241 B.R. 655 (9th Cir. BAP 1999), is
23  misplaced.  They argue that it is analogous because the
    bankruptcy court's decision shifted the burden in the § 723
24  action and because § 723 liability can only be determined in an
25  adversary proceeding.  But as we note above, the bankruptcy
    court has not decided the § 723 action.
26

27      [7]  Fed. Deposit Ins. Corp. v. Daily (In re Daily), 47 F.3d
    365, 369 (9th Cir. 1995) ("It is implicit in the doctrine of
28                                                    (continued...)

18

In sum, when they objected to the claim, Appellants were on notice that the bankruptcy court would determine the amount of the claim.  When the bankruptcy court engaged in the required liquidation of the claim, it did not impermissibly shift the burden of proof in the § 723 action — indeed, it cannot have done so, as it has not yet decided that matter.

**D.    The bankruptcy court did not abuse its discretion when it denied Appellants' motion for reconsideration.**

Appellants claim the bankruptcy court erred in denying their reconsideration motion in two respects.  We disagree.

**The bankruptcy court applied the correct standard.**  The first problem, they argue, is that the bankruptcy court applied the wrong legal standard: because it raised the allocation issue sua sponte, it should have evaluated the evidence "anew" and not based on the Civil Rule 59 standard.  They assert that by not doing so "the bankruptcy court specifically violated the holding of <u>McMillan v. Jarvis</u>, 332 F.3d 244 (4th Cir. 2003) and applied the incorrect law . . . ."  Appellants' Opening Br. at 28.

But we have already concluded that Appellants were on notice that the bankruptcy court could adjudicate the amount of the claim as to the Doorman Partnership.  As a result, the bankruptcy court did not sua sponte and without notice decide the matter.  So it did not need to consider "anew" the newly

---

[7](...continued)
collateral estoppel that, where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding.").

19

1  offered evidence.

2      In addition, Appellants misread the record.  The bankruptcy
3  court carefully considered the evidence.  It issued a nine-page
4  memorandum decision discussing reconsideration and spent five
5  pages addressing the "newly introduced" evidence.  Admittedly,
6  the bankruptcy court did not formally accept the evidence.  But
7  it evaluated and considered the proffered evidence; it decided
8  that the evidence did not change its conclusion.

9      Finally, Appellants asked the bankruptcy court to apply the
10 Civil Rule 59 standard.  In their reconsideration motion,
11 Appellants argued that, when a § 502(j) reconsideration motion
12 is filed within 14 days of the decision, the Civil Rule 59
13 standard is appropriate.  Now, on appeal, Appellants argue that
14 a different standard should apply.  Because they did not apprise
15 the bankruptcy court of this alternate standard, they waived the
16 issue on appeal.  Mano-Y&M, Ltd. v. Field (In re Mortg. Store,
17 Inc.), 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive
18 an issue by failing to raise it in a bankruptcy court."); Orr v.
19 Plumb, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is
20 that arguments raised for the first time on appeal . . . are
21 deemed forfeited.").

22 **The bankruptcy court considered the new evidence.**
23 Appellants next contend that evidence they submitted with their
24 reconsideration motion shows that the bankruptcy court erred;
25 they relate the evidence and repeat the arguments from their
26 reconsideration motion.  In their reply brief, they admit that
27 the reconsideration motion included "all the evidence they would
28 have submitted *had* the bankruptcy court" said it would decide

Case: 15-30912    Doc# 183    Filed: 06/19/18    Entered: 06/21/18 15:59:28    Page 20 of 21

1 the allocation issue.  Appellants' Reply Br. at 8.

2     Appellants miss an important point.  The bankruptcy court

3 considered that evidence.  It found it wanting; indeed, it

4 issued a detailed memorandum decision denying Appellants' motion

5 for reconsideration.  It walked through the evidence, evaluated

6 Appellants' arguments, and explained why neither compelled a

7 different result.  And Appellants never argue or explain in

8 their opening brief why the bankruptcy court's analysis is

9 flawed.  As a result, they have not shown how the bankruptcy

10 court abused its discretion.

**CONCLUSION**

12     Based on the foregoing, we AFFIRM.

21